The **HOME INSURANCE COMPANY, INC., Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. 87 Civ. 0675 (SWK).**

United States District Court, S.D. New York.

Jan. 29, 1988.

---

Skadden, Arps, Slate, Meagher & Flom, New York City, by Irene A. Sullivan, Sheila L. Birnbaum, Loring I. Fenton, for plaintiff.

Semel, Boeckmann, Diamond, Schepp & Yuhas, New York City, by Irving N. Selkin, for defendant.

**MEMORANDUM OPINION
AND ORDER**

KRAM, District Judge.

Plaintiff brings this action for declaratory relief and damages pursuant to 28 U.S.

C. § 1332 and 2201. Plaintiff alleges that the defendant has breached an insurance contract by refusing to exhaust the limits of a policy of primary insurance it issued to defendant J.C. Penney. Presently before this Court is plaintiff's motion for partial summary judgment, defendant's cross-motion for summary judgment and defendant's alternative motions to dismiss the complaint pursuant to Fed.R.Civ.Pro. 19(b) and to transfer the action pursuant to 28 U.S.C. § 1404(a).

*Facts*

Defendant Liberty Mutual Insurance Company ("Liberty") issued a primary insurance policy to Bassett Furniture Industries Inc. ("Bassett"), which was in effect at the time of the accident giving rise to the underlying litigation (the "Bassett Primary"). This policy provides that Liberty will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury. The Bassett Primary also obligates Liberty "... to defend any suit against the insured seeking damages on account of such bodily injury."

The Bassett Primary contains an "other insurance" clause which provides, in relevant part that the insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. The aggregate limits of coverage of the Bassett Primary are one million dollars ($1,000,000).

The primary insurance policy issued to J.C. Penney Company ("Penney") by Liberty ("the Penney Primary") provides that Liberty "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury." Like the Bassett Primary, the Penney Primary also contains a "duty to defend" clause. The Penney Primary provides aggregate limits of coverage of two million dollars ($2,000,000) and contains an "other insurance" clause which provides:

The insurance afforded by this policy is excess insurance, and does not apply to

the extent that any other valid and collectible insurance is available to the Insured, whether on a primary, contributory or excess basis, or otherwise, unless such other insurance was specifically purchased by the Named Insured to apply in excess hereof.

The commercial umbrella insurance policy issued to Bassett by Home ("the Home Umbrella") obligates Home to pay the "Ultimate Net Loss" arising out of the insured's liability for personal injuries and does not impose upon Home a duty to defend its insured in any underlying litigation. The Home Umbrella defines "Ultimate Net Loss" as all sums which the insured shall become obligated to pay as damages due to personal injury and it also provides that the Company shall not be liable for any item of Ultimate Net Loss included in ... other valid and collectible insurance. The aggregate limit of coverage of the Home Umbrella is twenty million dollars ($20,000,000).

The Home Policy contains an "other insurance clause" which provides:

> If other valid and collectible insurance is available to the Insured covering a loss also covered by this policy, other than insurance that is specifically stated to be in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

The underlying litigation arose out of a tragic accident on July 14, 1984 in which an infant allegedly suffered asphyxiation-induced brain trauma when his clothing became entangled on a portion of a crib. The crib had been manufactured by Bassett and sold to the infant's parents by Penney. In an action captioned *Daniel Lineweaver, et al. v. Bassett Furniture Industries, Inc., et al.,* No. 267 008 (Superior Court of California, County of Contra Costa), the infant's parents brought suit on behalf of the infant, themselves and other members of their family. On or about January 23, 1985

an amended complaint was filed in that action (the "Amended Complaint"). The amended complaint named both Bassett and Penney as defendants, asserted certain causes of action against Bassett and also asserted independent causes of action against Penney.

A second action was commenced by the infant's family on or about May 5, 1983. This action, *Rose Lineweaver, et. al. v. Bassett Furniture Industries, Inc.,* No. 285895 (Superior Court of California, County of Contra Costa), was brought on behalf of the infant, his mother and the general public, and named as defendants Bassett, Penney and five hundred fictitious entities. Plaintiffs sought damages for allegedly unfair, unlawful and deceptive trade practices in violation of the Business and Professions Code of the state of California.

On or about September 18, 1986 both *Lineweaver* actions were settled. Bassett, Penney, Liberty and Home were parties to the settlement agreement. The total value of the settlement package is approximately 3.5 million dollars. As part of this settlement, Liberty tendered the full one million dollar limit of the Bassett Primary policy, but refused to contribute any sums from the Penney Primary. Home contributed the remaining $2,570,801.93. During the court proceedings relating to the entry and approval of the settlement on June 11, 1986, Home and Liberty expressly reserved all rights to determine in the future which would ultimately be liable for any payments made in excess of the one million dollar policy limit of the Bassett Primary.

After commencing this action the plaintiff filed a statement of allegedly undisputed material facts pursuant to Local Rule 3(g). Under this rule, the defendant should have filed its own separate statement of facts to which Liberty alleged a genuine issue of fact existed to be tried. The defendant failed to do so and consequently all facts alleged in the plaintiff's 3(g) statement are deemed admitted. Local Rule 3(g)

*Discussion*

A motion for summary judgment should be granted if there is no genuine issue as

to any material fact and if the moving party is entitled to judgment as a matter of law on those undisputed facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no such issues of fact exist. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970).

■ The issue in this case is whether Liberty must contribute the limits of the Penney Primary to the *Lineweaver* settlement action before the Home Umbrella policy is required to contribute. Home asserts that the umbrella policy it issued to Bassett is by its nature excess to the Penney Primary and therefore is a final tier of coverage. Liberty takes the position that the Penney Primary is not excess to the Bassett Primary and is thus not valid and collectible insurance available to Home. For the following reasons, plaintiff's motion for summary judgment is granted.

Since the facts in plaintiff's 3(g) statement are deemed admitted by the defendant, this Court finds that the policy issued by Home to Bassett was an umbrella policy. "Umbrella coverages . . . are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." 8A Appleman on Insurance, § 4909.85, p. 453–54 (1981); *accord, Occidental Fire and Cas. Co. v. Brocious*, 772 F.2d 47 (3d Cir.1985). The Court's conclusion is bolstered by the fact that the premium on the $20 million policy was only $14,600. *See State Farm Fire and Gas Co., v. LiMauro*, 65 N.Y.2d 369, 492 N.Y.S.2d 534, 482 N.E.2d 13. (The fact that an umbrella policy is issued at lower premium rates reflects the reduced risk incurred by the insurer and indicates an intent to make the umbrella policy excess to all other policies.) 492 N.Y.S.2d at 541, 482 N.E.2d at p. 20.

New York courts have consistently found that an umbrella policy is not required to contribute to the payment of a settlement until all other applicable policies have been exhausted regardless of the wording of those policies "other insurance" clauses. *See State Farm Fire and Casualty Co., v. LiMauro, supra,* (umbrella policy provides a final tier of coverage to triggered only after the exhaustion of all other policies. Consequently, driver's primary policy must exhaust itself before the umbrella policy must contribute to the judgment.); *Lumbermens Mutual Casualty Co. v. Allstate Insurance Co.*, 51 N.Y.2d 651, 435 N.Y.S. 2d 953, 417 N.E.2d 66. (Driver's automobile and executive policies must be exhausted before the umbrella policy is required to contribute to the judgment. Parties to the umbrella policy bargained for coverage in excess of all other available coverage.); *Northbrook Excess and Surplus Ins. Co. v. Chubb Group of Insurance Companies*, 113 A.D.2d 319, 496 N.Y.S.2d 430 (1st Dep't, 1985), *aff'd* 67 N.Y.2d 1015, 503 N.Y. S.2d 317, 494 N.E.2d 448, (umbrella policy not required to contribute to settlement of a personal injury action until all other policies have been exhausted.)

The defendant argues that since the Penney Primary was not issued to Bassett, Liberty (as Penney's insurer) has no obligation to contribute to this settlement. The defendant argues as if Penney was not a party to either the *Lineweaver* civil action or the settlement and thus has no duty of contribution. However, the facts clearly indicate that Penney was a party to the settlement and it appears to this Court that Liberty, as Penney's insurer, is attempting to obviate its obligation of contribution. To support its position, Liberty cites several cases, none of which addresses the issues presented in this action.[1]

Liberty has merely asserted in a conclusory manner that the Penney Primary need

---

**1.** Defendant relies on *Caporino v. Travelers Ins. Co.,* 62 N.Y.2d 234, 476 N.Y.S.2d 519, 465 N.E.2d 26 (Ct.App., 1984) for the proposition that courts "may not disregard clear provisions which the insurers inserted in the policies and the insured accepted." *Id.,* 476 N.Y.S.2d at 521, 465 N.E.2d at 28. However, in *Caporino* the action was between the beneficiaries of a life insurance

policy and the insurer over interpretation of an accidental indemnity clause.

In *Walters v. Great American Indemnity Co.,* 12 N.Y.2d 967, 238 N.Y.S.2d 960, 189 N.E.2d 495 (Ct.App.1963) the court stated that the insurance contract involved "was plain and unambiguous upon its face and the intent of the parties is clearly indicated by the language used." *Id.,*

not contribute to the settlement. Based on facts which are not disputed in this case, this Court concludes that among the competing policies involved in this case, the Home Umbrella provides a final tier of coverage and is thus not required to contribute to the settlement until the Penney Primary has been exhausted. Plaintiff's motion for summary judgment is granted.

*Defendant's Cross–Motion For Summary Judgment*

■ Liberty asserts that it is entitled to summary judgment on the grounds that Penney is an indispensable party to this action who was not joined. This Court disagrees and therefore defendant's cross-motion is denied.

Fed.R.Civ.P. 19 requires persons who have protectable interests in an action to be joined if feasible. Rule 19(a)(2)(i). Joinder is not feasible when it will defeat jurisdiction, as is the case in this action, because Penney's principal place of business is in New York. If joinder is not feasible, the court must decide whether the party is "indispensable" such that "in equity and good conscience" the action should not proceed without that party's presence. Rule 19(b). The Rule lists a number of factors to consider in deciding whether a party is indispensable, the most relevant here being the prejudice of a judgment to the absent party.

Penney is in no danger of being prejudiced by a resolution of this declaratory judgment action. Penney has been fully indemnified by Liberty for its participation in the *Lineweaver* settlement. The action before this Court is strictly an inter-carrier dispute over priority of contribution to a

settlement. Penney's interests are fully protected and it is in no danger of being left uncovered.

Moreover, this Circuit has held that in suits between insurers concerning respective liabilities, the insured is not an indispensable party. *See City of Wyoming v. Insurance Co. of North America*, 518 F.2d 23 (2d Cir, 1975). (In declaratory judgment action between insurers to determine liability the Court found that the insured was not an indispensable party for the purpose of preserving diversity jurisdiction.)

Defendant's cross-motion for summary judgment is denied.[2]

*Defendant's Alternative Motion to Dismiss*

Since this Court has already ruled that Penney is not an indispensable party to this declaratory judgment action, defendant's motion to dismiss the complaint for failure to join Penney as an indispensable party is denied.

*Defendant's Alternative Motion to Transfer*

■ Defendant moves in the alternative to transfer this action to California pursuant to 28 U.S.C. § 1404(a) which states:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The moving party has the burden of proving by clear and convincing evidence that "the balance of convenience weighs strongly in favor of the transferee court ..." (citations omitted). *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 759 (S.D.N.Y. 1980); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978),

---

238 N.Y.S.2d at 962, 189 N.E.2d at 496. Nevertheless, in *Walters* the action was between the executors of the deceased insured's estate and the insurer over damages caused by leakage of industrial appliances.

The defendant fails to explain how these cases pertain to the present action.

**2.** The defendant relies on allegations of an agreement at the settlement conference that Penney was to be an indispensable party to any declaratory judgment action brought by Home against Liberty. However, "indispensability" is a conclusory term applied to a particular party

only after *the court* examines factors relevant to facts of a particular case in light of equity and good conscience. *Lone Star Indus. Inc. v. Redwine*, 757 F.2d 1544 (5th Cir.1985) (emphasis added). Furthermore, whether a party is indispensable is a question which must be decided by [the court] in the practical context of each particular case. *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78 (S.D.N.Y.1973). Therefore, defendant's allegation of an agreement between the parties is irrelevant because only the Court has the authority to determine what parties are indispensable.

*cert. denied* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). The relevant factors of inquiry include:

> the convenience to the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious and inexpensive; and the interests of justice.

*Vassallo, supra,* 495 F.Supp. at 759 (citation omitted).

The defendant argues that the entire action should be transferred to California because that is where the underlying tort occurred. Nevertheless, the defendant fails to carry its burden for several reasons.

First, the defendant offers no evidence whatsoever that California is the most convenient place for adjudication of this inter-carrier dispute. California, other than being the site of the underlying tort, has no connection to this declaratory judgment action whatsoever.[3]

Second, access to proof is not more convenient in California. This action is an inter-carrier dispute involving understanding of the policies' provisions.

Lastly, the defendant has failed to offer any practical considerations that would make trial of this action easier or less expensive in California. In sum, defendant fails to meet its burden of proving that the balance of convenience weighs heavily in favor of the California courts hearing this action. Consequently, defendant's motion to transfer is denied.

SO ORDERED.

---

**3.** Defendant also attempts to justify transfer of this action by stating that Penney intends to institute a cross-claim against Bassett in California for indemnity. Liberty argues that since the witnesses for this yet to be filed action are in California the present action should be transferred. Defendants argument is totally unpersuasive. Liberty continually fails to recognize that Penney and Bassett are not involved in this strictly inter-carrier dispute. Therefore, any cross-claim by Penney against Bassett is unrelated to the present action and need not be considered as part of this motion to transfer.