13-2438-cv(L)
WCHCC (Bermuda) Ltd v. Granite State Ins. Co.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand fourteen.

PRESENT:  JOHN M. WALKER, JR.,
          DENNY CHIN,
          CHRISTOPHER F. DRONEY,
                Circuit Judges.

- - - - - - - - - - - - - - - - - - - - - - - -x

WCHCC (BERMUDA) LIMITED,
                Plaintiff-Appellee,

          -v-                                13-2438-CV
                                             13-2866-CV

GRANITE STATE INSURANCE COMPANY,
                Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLEE:     BARRY G. SARETSKY, Saretsky Katz
                            Dranoff & Glass, LLP, New York,
                            New York.

FOR DEFENDANT-APPELLANT:    ROSS P. MASLER, McGaw, Alventosa &
                            Zajac, Jericho, New York, and Glen
                            A. Kaminska, Ahmuty, Demers &
                            McManus, Albertson, New York.

Appeal from the United States District Court for the Southern District of New York (Briccetti, J.).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Granite State Insurance Company ("Granite") appeals from the district court's judgment in favor of plaintiff-appellee WCHCC (Bermuda) Limited ("WCHCC") awarding WCHCC $1,211,342.47 plus interest. Judgment was entered after the district court granted, by memorandum decision filed June 10, 2013, WCHCC's motion for summary judgment. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

In brief, Granite issued professional liability insurance to a nurse working at the Westchester Medical Center ("WMC"). Granite argues that the coverage it supplied to the nurse was junior to the general liability insurance WMC obtained from WCHCC for itself and its staff. Granite thus argues that when the nurse settled a medical malpractice suit filed in state court, WCHCC should have paid first, with Granite owing only the amount in excess of WCHCC's coverage. The district court disagreed, holding that language in WCHCC's insurance policy rendered it excess to the Granite policy.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is

2

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review de novo a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party.  See, e.g., McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012).  "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."  Vigilant Ins. Co. v Bear Stearns Cos., 884 N.E.2d 1044, 1047 (N.Y. 2008) (internal quotation marks omitted).  We therefore review de novo the district court's interpretation of the insurance provisions at issue.

Under New York law, when each of two insurance policies "generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of the insurance."  Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 417 N.E.2d 66, 68 (N.Y. 1980).  This rule is inapplicable, however, "when its use would distort the meaning of the terms of the policies involved," which "turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance."

3

State Farm Fire & Cas. Co. v. LiMauro, 482 N.E.2d 13, 17 (N.Y. 1985) (internal citation omitted).

Even insurance policies that claim to be excess can be placed in a "pecking order" consistent with the nature of protection each competing policy confers. See Argonaut Ins. Co., v. U.S. Fire Ins. Co., 728 F. Supp. 298, 300 (S.D.N.Y. 1990). Such is the case here. We are presented with policies that are only superficially similar: both have "other insurance" clauses, but the plain language of each policy provides for different coverage.

In Lumbermens, the Court of Appeals of New York noted that there are three general types of excess insurance policies, the first two of which are relevant here. The first Lumbermens category encompasses policies generally stating that they are excess to other sources of insurance. See 417 N.E.2d at 67 (noting that policy provided that "[i]f there is other insurance[, this policy] . . . shall be excess insurance" (internal quotation mark omitted)). The second Lumbermens category encompasses policies stating that they are excess to other policies, but specifically addressing their interplay with other excess policies. See id.

Granite's "other insurance" clause mirrors the language of the first Lumbermens category. The Granite policy provides that "if there is other insurance, which applies to the

4

loss covered under this Policy, the other insurance must pay first."  (App. 26-27).  While the Granite policy would be considered "excess" of primary insurance, it contains no explicit statement about its position with respect to other <u>excess</u> policies.

By contrast, the WCHCC policy falls within the second <u>Lumbermens</u> category.  It provides that it is "excess of any valid and collectible insurance or self insurance coverage afforded or provided to . . . <u>a nurse</u> . . . , whether such other insurance or self insurance is stated to be primary, contingent, [or] <u>excess</u>."  (App. 42) (emphases added).  The WCHCC policy thus specifically provides that it is excess to any policy provided to a nurse, whether excess or otherwise.  Although the WCHCC policy also contains a provision contemplating equal contribution, this provision is triggered only when another policy applies "on the same basis."  (App. 43).  That is not the case here:  by its explicit terms, the WCHCC policy does not apply on the same basis as the Granite policy.

The plain language of these other insurance provisions compels the conclusion that these policies should be tiered, consistent with <u>Lumbermens</u>.  Accordingly, we agree with the district court that the WCHCC policy is excess and the Granite policy must be exhausted first.  <u>See</u> <u>Lumbermens</u>, 51 N.E.2d at 68

(finding that policy was senior where it "clearly provided that" another policy "should be exhausted first").

The disparity in premiums for each policy does not vitiate this conclusion because the policies themselves are not comparable.  WCHCC's policy provides comprehensive professional liability and commercial liability coverage for the WMC -- an entire hospital -- and its employees, while Granite merely covers professional liability for one nurse.  The difference in premiums is thus not instructive in determining tiers of coverage.  See Northbrook Excess & Surplus Ins. Co. v. Chubb Grp. of Ins. Cos., 496 N.Y.S.2d 430, 433 (1st Dep't 1985) ("In evaluating the significance of the amount of the premium, it is clearly important to measure that premium against the [comprehensiveness of the] coverage provided by that policy."), aff'd mem., 494 N.E.2d 448 (N.Y. 1986).

Granite also argues that WCHCC did not have the authority to enter into a settlement on behalf of the nurse.  We disagree.  As the district court noted, Granite was informed of the case against the nurse by January 2009, two years before settlement was reached, but opted not to participate in pre-trial negotiations.  Indeed, in November 2010, the nurse, the hospital, and WCHCC all sought to engage Granite's participation in mediation and settlement talks.  Instead of participating, Granite, through its counsel, "demanded" that WCHCC continue to

6

defend the nurse throughout mediation and settlement negotiations. In light of Granite's failure to object to WCHCC's involvement in settlement negotiations -- of which it was fully aware and in which it could have participated -- it has no basis upon which to challenge WCHCC's representation of the nurse.

We have considered appellant's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7